**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**UNITED STATES**                                              **PLAINTIFF/RESPONDENT**


**V.**                                  **No.  5-13-50045**
                                        **No.  5-16-05114**


**SANTOSH RAM**                                              **DEFENDANT/PETITIONER**

**MAGISTRATE JUDGE REPORT and RECOMMENDATION**

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence

Pursuant to 28 U.S.C. Section 2255 (Doc. 84 and 89) filed May 26, 2016 and June 22, 2016.  The

United States of America filed a Response (Doc. 94) on August 26, 2016.  The Petitioner  filed a

Reply (Doc. 106) on October 31, 2016.  The matter was reassigned to the undersigned on April

10, 2018 and the matter is ready for Report and Recommendation.

### I. Background

On March 8, 2013, a criminal complaint was filed against Santosh Ram alleging he

violated 18 U.S.C. § 2422(b), namely Online Enticement of a Minor, on or about March 6, 2013,

in the Western District of Arkansas.  On April 24, 2013, Ram was named in a one-count

Indictment filed in the Western District of Arkansas charging that on or about September 18,

2011, and continuing through and including October 16, 2011, Ram, using a computer connected

to the internet, knowingly attempted to persuade, induce, entice, and coerce an individual whom

he believed was 11 years of age, to engage in any sexual activity for which any person can be

charged with a criminal offense, namely Arkansas Code Annotated Section 5-14-103 (Statutory

Rape), in violation of Title 18, United States Code, Section 2422(b). (Doc. 12). Said charge

carries a statutory range of a minimum of ten (10) years and a maximum of Life.

On April 25, 2013, Kim Weber, petitioner's retained attorney, entered her appearance (Doc. 9) and on April 30, 2013, Ram appeared with counsel, Kim Weber, for arraignment and entered a not guilty plea. (Doc. 17).

On August 28, 2013, Ram, represented by Weber, appeared before the Honorable Jimm Larry Hendren. At said hearing, the parties informed the Court that they had reached a plea agreement whereby Ram would plead guilty to an information and the Government would dismiss the indictment at sentencing. Accordingly, Ram waived his right to prosecution by indictment and consented to prosecution by information. (Doc. 28). An Information was filed that same day charging the defendant with Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (Doc. 29). The statutory penalty range of said offense is five (5) years to twenty (20) years. Thereafter, Ram appeared with counsel, Kim Weber, before the Honorable Jimm Larry Hendren for his initial appearance, arraignment, and a change of plea hearing. A written plea agreement was presented to the Court that set forth that Ram would agree to plead guilty to the Information charging him with knowing receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). (Doc. 31).

On December 18, 2013, the Probation Office filed Ram's final Presentence Investigation Report ("PSR"). (Doc. 38). The PSR assessed a base offense level of 22 pursuant to U.S.S.G. § 2G2.2(a)(2). (PSR, ¶ 44). Ram's base offense level was decreased by two pursuant to § 2G2.2(b)(1) but increased by two because a computer was used which resulted in an adjusted offense level of 22. (PSR, ¶¶ 45, 46, and 50). After receiving three-levels off for acceptance of responsibility, Ram's total offense level was set at 19. (PSR, ¶¶ 52 - 54). However, Cross

-2-

References to the Production of Child Pornography guideline were applied which increased Ram's base offense level to 32 pursuant to U.S.S.G. § 2G2.1(a). (PSR, ¶ 56). Ram's offense level was then increased by 4-levels due to specific offense characteristics. (PSR, ¶¶ 57 and 58). After receiving 3-levels off for acceptance of responsibility, Ram's greater total offense level was set at 33. (PSR, ¶¶ 64 - 67). Ram's criminal history category was a I. (PSR, ¶ 70) and based on a total offense level of 33 and a criminal history category of I, Ram's guideline imprisonment range was 135 to 168 months. (PSR, ¶ 70, 93). The United States made one objection to the PSR while Ram made eight. (See Addendum to PSR).

On February 18, 2014, Ram appeared with counsel, Kim Weber, for sentencing. (Doc. 44). The Court sentenced Ram to 135 months imprisonment, 5 years supervised release, a $10,000 fine, and $100 special assessment. (Doc. 47).

Ram filed a notice of appeal on March 4, 2014. (Doc. 49). On appeal, Ram's counsel filed an Anders brief in which she challenged his sentence as being substantively unreasonable. *United States v. Ram*, 594 Fed.Appx. 317 (8th Cir.2015). Additionally, in pro se submissions, Ram challenged his Guidelines computations and argued his sentence was unreasonable because the Court impermissibly considered his race when fashioning his sentence, among other arguments which the Eighth Circuit rejected. Id. at 317-18. The Eighth Circuit affirmed this Court's judgment. Id. at 318. Ram filed a petition for writ of certiorari on July 29, 2015 (Doc. 73) which was denied on October 7, 2015 (Doc. 75).

On May 26, 2016, Ram filed an initial motion pursuant to 28 U.S.C. § 2255. (Doc. 84). However, the Court found the motion to be unnecessarily lengthy and directed Ram to file an amended motion consisting of no more than 25 pages. (Doc. 86). On June 22, 2016, Ram filed

his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 89) and brief in support (Doc. 90) arguing (A) Actual Innocence, (B) Insufficient Evidence, (C) Ineffective Assistance of Counsel, and (D) Misapplication of Sentencing Guidelines.

## II.  Discussion

### A.  Petition's Claims:

The Petitioner has raised a total of twenty one (21) claims in his 2255 motion.  Many of the claims have numerous sub-claims and the court will attempt to deal with the Petitioner's claims in the sequence he has placed them.

### 1.  Actual Innocence:

The petitioner first contends that he is actually innocent of the "charge I pleaded guilty" to. (Doc. 90, p. 2). The Petitioner also contends that his plea was "involuntary" but asserts no factual basis for his involuntary plea and only contends that he did not "remember" creating a Facebook profile with the name of "Peter Na". (Id.). The voluntariness of the Petitioner's plea will be dealt with in a subsequent section.

The Petitioner previously argued his claim of actual innocence before the Eighth Circuit Court of Appeals which held that "his claim of innocence, because it is a non-jurisdictional argument, is foreclosed by his guilty plea." See *United States v. Ram*, 594 F. App'x 317 (8th Cir. 2015). The Eighth Circuit Court of Appeals has specifically held that those claims previously litigated and decided adversely to a criminal defendant may not be re-litigated in a § 2255 proceeding. *Woods v. United States*, 567 F.2d 861, 863 (8th Cir. 1978) (citing *Scott v. United States*, 545 F.2d 1116, 1117 (8th Cir.1976)).

### 2. **Insufficient Evidence:**

The Petitioner contends that the evidence was insufficient to "support that any crime had

happened." (Doc. 90, p. 3).

The Plea Agreement sets forth the factual basis that child pornography images were found

on the Petitioner's computer (Doc. 31, ¶3).

At the change of plea hearing, Ram admitted that the following facts supported his guilty plea:

> THE COURT: All right. I'm going to ask Mr. Roberts
> now to relate on the record the basis for this charge against
> you as set out in the Information. Now, the reason I do that,
> Mr. Ram, and I want you to listen carefully, because I have to
> be sure that what he says actually supports this charge against
> you. Even if you plead guilty to it, I can't accept your plea
> unless it's really a crime, unless there's really a basis to
> support it. So listen carefully, and I'll ask some questions of
> you when he finishes.
> Mr. Roberts, please.
>
> MR. ROBERTS: Thank you, Your Honor. On October 14 th
> 2011, a concerned relative living in Mt. Pleasant, Iowa reported
> to a local law enforcement that she had discovered that her
> underage niece had been having sexually explicit conversations
> online with someone she suspected to be an adult male. At the
> time of the conversation, the suspect was using the Facebook
> account name of Peter Na. A review of the online conversation
> revealed that the suspect repeated requested that the minor turn
> on her webcam so he could see her nude and see her engage in
> sexual acts, including masturbation.
> In November of 2011, law enforcement obtained the
> suspect's profile information from Facebook, which revealed it
> to belong to the defendant, Santosh Ram, Santosh Ram of Rogers,
> which is in the Western District of Arkansas. Consequently, a
> federal search warrant was executed at the home of Ram.

During the execution of the warrant, officers confiscated numerous computers and digital storage devices. A forensic examination of at least one of the computers revealed that the suspect -- revealed the suspect profile of Peter Na. During the post-Miranda interview, the defendant admitted that he was in fact the one having conversations with minor females via computer connected to the internet. He specifically told law enforcement that he created Peter Na account in an effort to chat with minors via webcam, and that he in fact did receive several images of their genitalia via webcam over the internet. He further admitted that he did save some of the images to his computer. A forensic examination of his computer revealed that there were several instances in which the defendant received images of minors engaged in sexually explicit conduct. Specifically, on more than one occasion, he received closeup images over the internet of the vaginas of females. Or minor females. Thank you, Your Honor.

THE COURT: Ms. Weber, do you believe that if the information just related by Mr. Roberts were presented to a jury and the jury believed it that it could be sufficient to support a finding of guilt beyond a reasonable doubt on the charge set out in the Information?

MS. WEBER: Yes, Your Honor.

THE COURT: Now, Mr. Ram, as Mr. Roberts spoke, I was looking at the Plea Agreement, and I believe he related what's in Paragraph 3 of the agreement as to what happened here. You told me earlier that was all true. Now that you've heard it, do you still agree that's true?

THE DEFENDANT: Yes, sir.

THE COURT: That's what happened?

-6-

THE DEFENDANT: Yes, sir.  (Doc. 70, pp. 35-37)

The Petitioner's claim that there was insufficient evidence to support the plea is clearly without merit.

### 3.  Ineffective Assistance of Counsel:

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v. Wyrick,*  642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e *United States v  Ledezma-Rodriguez*, 423

-7-

F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

The Petitioner has raised a plethora of ineffective assistance claims against his attorney

which he has categorized  as  "3.a-3.g".  The court will attempt to address the claims within the categories set forth by the Petitioner.

### a. Legal Advice (Category 3.a.01--3.a.20):

Category "3.a" alleges that the Petitioner's attorney rendered inadequate legal advice (Doc. 90, p. 8) and contains twenty allegations which are summarized as follows:   challenge to waiver of Miranda rights (01); right against self incrimination (02); right to challenge statement (03); evidence about corroboration of confession (04); willingness to go to trial (05); strength of government's case (06); right to bench trial (07); no additional penalty for going to trial (08); potential defenses (09); conditional plea (10); failed to explain about attempt (11); alleged Plea deal (12); explain pre sentence report (13); to advise about withdrawal of plea (14); to explain 2422(b) (15); accepting responsibility (16); failure to discuss trial tactics (17); plea agreement had no specific sentence (18); guidelines sentence (19); and advice to plea.

The Supreme Court has repeatedly emphasized that the effectiveness of legal representation afforded criminal defendants is to be appraised by normative legal standards which, when applied in a specific factual context, yield a resolution concerning whether a particular defendant received constitutionally adequate assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance; he need not correctly predict the admissibility of evidence or anticipate future judicial holdings. His advice, however, must be "within the range of competence demanded of attorneys in criminal cases."  *McMann*, supra, at 770-71, 90 S.Ct. at

1449. *U. S. ex rel. Healey v. Cannon*  553 F.2d 1052, 1057 (C.A.Ill. 1977).

Many of the complaints by the petitioner concerning the advice he received from his attorney revolve around his decision to enter a plea. The Petitioner was scheduled to go to trial on August 29, 2013 on the charge of knowingly attempting to persuade an individual whom he believed was 11 years of age to engage in sexual activity.   On August 28, 2013 he entered a Plea Agreement (Doc. 31) and, on the same day, appeared before the District Judge and entered a plea of guilty to one count of Receipt of Child Pornography. (Id., p. 1).

 A guilty plea operates as a break in the chain of events of the criminal process. *Tollett,* 411 U.S.258 at 267 (1973).  Once a criminal defendant solemnly professes his guilt before the Court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id.

The evidence of possession of child pornography is overwhelming because child pornographic images were found on the Petition's computer as a result of a validly executed search warrant. (Doc. 1, ¶12). At the time of the search and seizure of the Petitioner's computer he made certain incriminating statements after having been Mirandized by law enforcement and he contends that his attorney did not adequately explain the law concerning suppression of statements.  (01, 02, 03)  The Petitioner makes no factual allegations that would support any suppression of his statements.  See *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.) (vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255), cert. denied, 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal).  Also, the Petitioner's attorney asserted, through her affidavit, that there

-10-

were no "procedural or constitutional errors" that prohibited a plea and that any objection would have been "futile." (Doc. 94-1, p.5).

The Petitioner's claim that his attorney did not explain the concept of attempt (10) is not relevant because the government dismissed that charge and the Petitioner plea to possession of child pornography.

The complaint that his attorney failed to discuss his right to withdraw his plea is also not relevant. A defendant may withdraw a guilty plea after the court accepts the plea but before it imposes the sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B). It is clear that the Petitioner wanted to secure the advantage of a reduced charge and was not upset until the court rendered its sentence. After the court rendered sentence the Petitioner was not able to withdraw his plea and there is no evidence that he desired to withdraw his plea prior to sentencing.

The Petitioner also claims that his attorney did not adequately discuss the PSR and sentencing consequences of his plea. Any confusion Petitioner had about the possible sentence he faced was cured by the Plea Agreement (Doc. 31) and by the district court before it accepted the guilty plea: the court informed Petitioner, and he acknowledged, that he faced a minimum five-year and maximum twenty year sentence; that the Sentencing Guidelines would control his sentence; that the Guideline range could not be determined until the presentence report was prepared; that relevant conduct would be considered, and that if the sentence was more severe than expected, he would still be bound by his guilty plea. (Doc. 70). See *Chambliss v. United States*, 65 F.3d 172 (8th Cir. 1995). A Defendant is not constitutionally entitled to more advice than the minimum and maximum possible sentence. See *United States v. Granados*, 168 F. 3d

343, 345 (8th Cir. 1999).

### b.  Adversarial Effort (Category 3.b.01– 3.b.11):

Category " 3.b" alleges that the Petitioner's attorney failed to put "any meaningful adversarial testing to the government's case" (Doc. 90, p. 9) and list eleven allegations summarized as follows: withdrew objections to PSR (01); failed to file Motion to Dismiss Indictment (02); failed to file Motion to Dismiss Indictment (03); failed to challenge indictment (04); failed to make constitutional argument (05); failed to file speedy trial motion (06); failed to file Motion to Suppress (07); failed to assert sentence was cruel and unusual (08); failed to file timely motion for competency (09); failed to argue alternate punishment to incarceration (10); failed to file competency motion on time (11).

The facts, as set forth in the original complaint, show that on October 14, 2011 showed that an individual discovered her 11 year old nieces Facebook page open and logged into a live chat screen with another Facebook user named "Peter Na" (Doc. 1, p. 2). The reporting person then began to chat with Peter Na who instituted sexually explicit comments including requesting that she turn on her web-cam so he could see her nude and see her engage in sexual acts. Subsequent search warrant information revealed the Facebook account was actually in the name of Santosh Ram with an address in Rogers, Arkansas and the Facebook account had 559 pages of logged chat messaging between "Peter Na" and other users including the reporting person's 11 year old niece. (Id., p.4). The logged chat between the reporting person's 11 year old niece and "Peter Na" was 21 pages in length and occurred between September 18, 2011 and October 16, 2011.  In the chat the niece text that "I am only 11" to which "Peter Na" had several explicit sexual comments."  On March 6, 2013 a federal search warrant was executed on the Petitioner's

residence.  (Id.)  According to the facts set forth in the Plea Agreement a forensic examination of his computer revealed that in several instances the Defendant received images of minors engaging in sexually explicit conduct. Specifically, on more than one occasion, he received close up images over the internet of the vaginas of minor females. (Doc. 31, p.4).

Because the PSR correctly calculated the guidelines, his counsel was not ineffective in withdrawing the objections to the PSR. In *Toledo v. United States*, 581 F.3d 678 (8th Cir. 2009) the Eighth Circuit stated, "It is not ineffective assistance of counsel to withdraw objections that have no support in the law." Id. at 681. See also, *Cassidy v. United States*, 12 F.3d 1102 (8th Cir. 1994)(not designated for publication)(defendant's claim of ineffective assistance of counsel based on counsel's withdrawal of an objection was properly denied as there was no prejudice to defendant since there was no reasonable probability that the objection would have prevailed)

Also, there was no legal basis for Petitioner's attorney to file any motions to dismiss or challenge the indictment, to move to dismiss on speedy trial grounds, or to argue for "alternate" punishment.   Likewise the claim that the sentence was cruel or unusual was without merit because the Petitioner was sentenced within the statutory and sentencing guidelines. See *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument .. cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

The Petitioner complains that his attorney did not file a timely motion for mental competency evaluation. The statute provides that "**At any time** after the commencement of a prosecution for an offense ....the defendant or the attorney for the Government may file a motion for a hearing to determine mental competency." 18 U.S.C. §4241(a).  The court shall grant the

-13-

motion if there is "reasonable cause" to believe the defendant is mentally incompetent.

On August 20, 2013, just nine days before trial,  the Petitioner's attorney filed an Unopposed Motion to Determine Competency (Doc. 24).  The Court entered an order on August 25, 2013 denying the motion (Doc. 25) and a Motion for Reconsideration (Doc. 26) was filed August 26, 2013.  The court then conducted a Telephone Conference on August 27, 2013 and the Petitioner entered his plea on August 28, 2013.

The Petitioner does not now assert, nor was there was ever any reasonable cause to believe that the Petitioner was mentally incompetent. The court conversed with the Petitioner at length during the plea process (Doc. 70) and he responded intelligently and coherently to all questions by the court. The court specifically found that there was no reasonable cause to believe that the Petitioner was mentally incompetent. (Id., p. 22).  The Petitioner's behavior at time of plea, sentencing and his subsequent filings of numerous pro se documents belie that he was incompetent to assist in his defense at the time of plea. The contention that the motion for mental exam was untimely is without merit.

The Petitioner also assert that his attorney was ineffective for failing to file a Motion to Suppress.  At the time the agent executed the federal search warrant at the Petitioner's home he made several post Miranda incriminating statements. (Doc. 1, ¶ 13-18). At the plea hearing he testified that he was 31 years old and had a bachelor's degree in mathematics and a masters degree. (Doc. 70, p. 4).  He also acknowledged that, while he was a citizen of India, he did speak English and was working for the IT department of Walmart at the time of his arrest. (Id., p. 5).

The Petitioner does not claim that he was impaired in any way at the time the Miranda warning were given.  The Plea Agreement confirms that he admitted giving the post-Miranda

statement to the agent (Doc. 31) and he reaffirms that during the plea hearing. (Doc. 70, p. 37). There is no factual allegation that would support suppression of the Petitioner's post-Miranda statements.  It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.* 905 F.2d 218, 219 (C.A.8 (Minn.),1990)

    **c.  Appeal Counsel: (Category 3.c.01– 3.c.10):**

    Category "3.c" alleges ineffective assistance of counsel on appeal (Doc. 90, p.11) and alleges nine grounds summarized as follows: misapplication of sentencing guidelines (01); failed to renew objections (02); failed to advance argument on appeal (03); did not argue Breach of Agreement (04); failed to argue constitutionality of §2G2.1 and 2 (05); failure to advise about appeal process (06); pleaded offense not charge in original indictment (07); failed to argue no sexual exploitation occurred (08); error by Clerk of the Court (09); failed to argue dispute over child pornography guidelines (10).

    According to the opinion issued by the Eighth Circuit Court of Appeals the Petitioner's attorney "filed a brief under *Anders v. California*, 386 U.S. 738 (1967), challenging Ram's sentence as substantively unreasonable."  The court found that "the district court did not abuse its discretion in denying Ram's request for a variance, and that Ram's sentence is not unreasonable."(Doc. 72-1, p. 2).  The court also stated that it had "having reviewed the record independently under *Penson v. Ohio*, 488 U.S. 75, 80 (1988), we have found no nonfrivolous issues for review."  "It is the obligation of any lawyer - whether privately retained or publicly appointed - not to clog the courts with frivolous . . . appeals." *Polk County v. Dodson*, 454 U.S. 312, 323 (1981); *Parker v. Bowersox*, 94 F.3d 458, 462 (8th Cir.1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every

conceivable issue on appeal."). Therefore, absent contrary evidence, "we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir.1998) (quotation omitted).

d. **Conflict of Interest (Category d):**

The alleged conflict is that the Petitioner's attorney informed the Petitioner that if his case went to trial he would have to pay an additional fee. He also alleges that his attorney had other clients and her work load interfered her efforts to represent him. A conflict of interest arises "when the defense attorney ... [is] required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988).

To obtain post-conviction relief Petitioner must at least show (I) that a conflict of interest existed, and (ii) that the conflict adversely affected attorney's subsequent performance. See *Mickens,* 535 U.S. at 171-74, 122 S.Ct. 1237; *Koste v. Dormire*, 345 F.3d 974, 982-83 (8th Cir.2003), cert. denied, 541 U.S. 1011, 124 S.Ct. 2070, 158 L.Ed.2d 623 (2004). The adverse effect must be "actual and demonstrable." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir.2004) (quotation omitted).

The affidavit of the Petitioner's attorney states that the "facts were more than sufficient to convict Defendant of any of the three (3) child pornography charges" that the government could have pursued.  (Doc. 94-1, p. 4) The Petitioner did not want to go to trial because the government would have filed an Amended Information which would have put the Petitioner in a higher statutory category. (Id., p.5). It is clear that the decision not to pursue a trial was not fee based but factually driven. A review of the government's case supports that attorney's belief that the facts were sufficient to support a conviction.

The Petitioner has failed to show that a conflict existed.

### e. Failure to Investigate (Category e):

The Petitioner claims that his attorney failed to investigate an "identifiable information that linked me with the chat logs". (Doc. 90, p. 12). He claims that he "did not believe" he created the Facebook account and that his credit card was stolen and his laptop compromised.

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir.1993) (*quoting Strickland*, 466 U.S. at 691). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir.1996) (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir.1994)). Even if the Petitioner's attorney could have proven that the Petitioner credit card was stolen at some point in the past he has failed to demonstrate how this would have changed the outcome.

### f. Dissatisfaction with attorney services (Category f):

The Petitioner now claims he was dissatisfied with his retained counsel, however, being satisfied with one's attorney is not a constitutional right.

### g. Deception, lies and misrepresentation to get Petitioner to sign plea (Category g):

This will be addressed in the voluntariness of the Petitioner's plea

### h. District Court Error (Category h):

In this category the Petitioner contends that there was no factual basis for his plea. (Doc. 90, p. 17). The factual bases was set forth in the original complaint (Doc. 1), the Plea Agreement

(Doc. 31), and at the Plea Hearing (Doc. 70). This claim is meritless.

### 4. Misapplication of Sentencing Guidelines:

The Petitioner contends raises several argument concerning his sentencing revolving around the application and constitutionality of 2G2.2(c) of the Sentencing Guidelines.

The cross reference applies when the offense "involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." § 2G2.2(c)(1). This provision "is to be construed broadly." U.S.S.G. § 2G2.2 comment. (n.5). *United States v. Shuler*, 598 F.3d 444, 448 (8th Cir. 2010). The term "offense," as used in the cross-reference, includes both charged and uncharged relevant conduct. *United States v. Tagore*, 158 F.3d 1124, 1128 (10th Cir.1998); *United States v. Miller*, 166 F.3d 1153, 1155 (11th Cir.1999); U.S.S.G. § 1B1.1 n. 1(H). Relevant uncharged conduct must be proven by a preponderance of the evidence. *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir.2005). This court has broadly construed the meaning of relevant conduct. *United States v. Asch,* 207 F.3d 1238, 1243 (10th Cir.2000). Relevant conduct consists of "all acts or omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). *United States v. Garcia*, 411 F.3d 1173, 1177 (10th Cir. 2005).

For the reasons stated previously and because of the facts stated and affirmed at plea there was no misapplication of the Sentencing Guidelines.

### 5. Voluntary Plea:

The Petitioner contends that his plea was not voluntary and was the result of "ineffective assistance of counsel, inducement, threat, deception, and misrepresentation. (Doc. 90, p. 15)

The Petitioner alleges that his attorney "told me that she got five years deal and government will not oppose the sentence and guideline is advisory so do not worry about guideline and judge is going to give me 5 years sentence because I do not have any criminal history. (Id., p. 16).

The affidavit by the Petitioner attorney does not address this claim specifically but only states that her "advice concerning the plea agreement was complete and understood by Defendant before and at sentencing." (Doc. 94-1, p. 5).

The law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences. *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir.1994). Furthermore, a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence. See *Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir.1990). See also *United States v. Spears*, 235 F.3d 1150, 1152 (8th Cir.2001) (holding that a defendant's guilty plea was "knowing and voluntary," despite "any confusion about how he would fare under the Sentencing Guidelines").

The Petitioner executed a plea agreement on August 27, 2013 to a reduced charge and acknowledged in the plea that he "entered into the plea agreement freely, voluntarily, and without reservation" and that his plea was not the "result of threats or coercion directed at the defendant or anyone connected with the defendant." (Doc. 31, ¶26(e)). The Plea Agreement clearly provided that the charge the Petitioner was pleading guilty to required a mandatory minimum prison sentence of 5 years. (Id., ¶10(b)).  The Plea Agreement also specifically provided (in bold type) that it did not promise a specific sentence.

The Petitioner also appeared before the District Judge on August 28, 2013 and entered

-19-

his plea and acknowledged that he had reviewed the agreement with his attorney, understood it, signed it and that no one threatened or forced him to sign. (Doc. 70, p.23-24). The court specifically informed the Petitioner of the minimum and maximum possible sentences for the offense. (Id., p. 28). The court informed the Petitioner that the guidelines were advisory and that the court was not bound by the guideline. (Id., p. 29). During the court's discussion of the sentencing guidelines that Petitioner asked the following question: "The sentencing guidelines says some–some numbers, and if the number of the sentence is less than five years, will that happen?". (Id. p. 30). The court went on to explain that even if the guidelines recommended a sentence of less than five years the court would be bound to sentence him to at least five years.

An accused's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of veracity. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). Because the Plea Agreement specifically provided that no specific sentence had been offered and because of the Petitioner's dialog with the court concerning a lesser sentence his contention that he only entered his plea because he had a plea agreement for a five year sentence is without merit.

The record clearly supports the fact that the petitioner's plea was freely and voluntarily given. A valid guilty plea forecloses an attack on a conviction unless "on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Vaughan,* 13 F.3d 1186, 1188 (8th Cir.1994), quoting *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

### 6. Disparity in Sentence:

The Petitioner contends that his sentence represents a "gross national disparity". This

issued was appealed by the Petitioner and the Eighth Circuit found that the "district court did not abuse its discretion in denying Ram's request for a variance, and that Ram's sentence is not unreasonable." (Doc. 72-1, p. 2). For the reasons stated by the Court of Appeals this claim has no merit. *United States v. Ram*, 594 Fed.Appx. 317 (8th Cir.2015).

### 7. Breach of Plea Agreement:

This argument has been addressed under Voluntary Plea.

### 8. Defective Criminal Complaint, Information and Indictment:

Here the Petitioner contends that all of the charges made against him were defective. Because the Petitioner pleaded to the Information and not the indictment the court will only look at the factual allegations in the information.  The Information charged the Petitioner with receiving "a visual depiction that had been ...transported in interstate...commerce....which involved the use of a minor engaged in sexually explicit conduct." (Doc. 29).

A guilty plea operates as a break in the chain of events of the criminal process. Tollett, 411 U.S. at 267. Once a criminal defendant solemnly professes his guilt before the court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. Only the voluntary and intelligent character of the guilty plea may be attacked. Id.; see *Bass v. United States*, 739 F.2d 405, 406 (8th Cir.1984) (the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the plea). As noted previously the Petitioner acknowledged there was a factual basis in support of his guilty plea, acknowledged he was satisfied with counsel's legal services in connection with the Plea Agreement, and voluntarily entered into it. (See Doc. 31, ¶¶ 3 and 26; Doc. 70, pp. 11 - 12, 23 - 24, 35 - 37). Therefore, Ram is barred from challenging

-21-

counsel's alleged failures regarding the above mentioned claimed issues which occurred prior to him pleading guilty. Tollett, 411 U.S. at 267.

### 9. Speedy Trial:

The Petition now contends that the speedy trial requirements were violated in the governments handling of his case because he was arrested on March 8, 2013 and did not plea guilty until August 27, 2013.  (Doc. 90, p. 20). The right to a speedy trial is distinct from other rights enshrined in the Constitution to protect the accused. *Barker v. Wingo*, 407 U.S. 514, 519–20, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).  The denial of a speedy trial does not per se prejudice the defendant's ability to defend himself. *Barker*, 407 U.S. at 519–20, 92 S.Ct. 2182. Whether or not a motion is made to dismiss based upon Sixth Amendment speedy trial grounds, the defendant is guaranteed his day in court before a jury of peers. In fact, a delay in trial sometimes may work to the defendant's advantage, as witnesses become unavailable or memories fade, weakening the prosecution's case. *Thomas v. United States*, 737 F.3d 1202, 1208 (8th Cir. 2013).

The Petitioner cites United States v. Jackson, 488 F. Supp. 2d 866 to support his proposition that the speedy trial requirements were violated.  Jackson, however, does not support the Petitioner's claim because in Jackson the court found that a period of over two years, during which the file was referred to an attorney who took no action, resulted in crucial evidence being lost.  There is no such time delay by the government in this case and no lost or destroyed evidence. Regardless, once a criminal defendant solemnly professes his guilt before the court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267.

**10. Due Process:**

The Petitioner contends that due process was violated because the District Court did not grant the motion for mental evaluation.  This claim has no merit and has been addressed in the previous category under voluntariness of plea.

**11. Prosecutor Misconduct:**

The Petitioner contends the assistant U.S. Attorney committed prosecutor misconduct when he informed the Petitioner that if the Petitioner did not plea he would file charges for attempted production of child pornography which carried a minimum sentence of 15 years. (Doc. 90, p. 20).  "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." Goodwin, 457 U.S. at 382, 102 S.Ct. at 2493. Additionally, "[a]n initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382, 102 S.Ct. at 2493. This claim is addressed previously under the voluntariness of the petitioner's plea.

**12. Constitutional Challenge:**

The Petitioner contends that the portion of 18 U.S.C. §2251 "which deals with live stream is unconstitutional (or at lest ambiguous). (Doc. 90,  p. 21).  The failure to raise this issue on direct appeal constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir.2000).  The Petitioner cannot show any prejudice under this argument because, as noted above, the Petitioner was convicted under 18 U.S.C. §2252 not §2251 which does not have live streaming as an element.

**13. Fourth Amendment Violation:**

The Petitioner contends that there was no probable cause for the search of his apartment in Rogers, Arkansas.   The probable cause is abundant, as found by the federal judge that issued the search warrant, and,  as set forth in the Affidavit signed by Special Agent Gerald Faulkner with U.S. Homeland Security. (Doc. 1).

### 14.  District Court Abused Its Discretion:

The Petitioner contends the District Court abused its discretion, in summary, as follows: a) no factual basis for plea, b) wrong base offense level, c) no factual findings, d) did not consider §3553(a) factors, e)failure to appoint attorney for appeal, f)did not consider objections, g)sentence, h) judge was retired, I) denied competency evaluation, j) imposed fine, k) assessed forfeiture, l) did not inquire about conflict, m) ethical standards inquiry, n) alien rights.

 The Petitioner's claims in this section were decided adverse to him in his appeal to the Eighth Circuit Court of Appeals. *See U.S. v. Ram*, 594 Red. Appx 317 (2015), (Doc. 72-1).

### 15.  Excessive Sentence:

The Petitioner contends in this section that his sentence was excessive and that there was disparity in his sentence.  The Petitioner's claims in this section were decided adverse to him in his appeal to the Eighth Circuit Court of Appeals. *See U.S. v. Ram*, 594 Red. Appx 317 (2015), (Doc. 72-1).

### 16.  Waiver of Miranda Rights and Other Rights Involuntary:

The Petitioner made statements at the time federal law enforcement officers executed the search warrant at his home and he contends that the waiver of his Miranda rights was not voluntary. The Petitioner contends he did not understand his Miranda rights but he testified at his plea hearing that he was that he was 31 years old and had a bachelor's degree in mathematics and

a masters degree. (Doc. 70, p. 4). He also acknowledged that, while he was a citizen of India, he

did speak English and was working for the IT department of Walmart at the time of his arrest.

(Id., p. 5). Age, education, and experience with the criminal justice system are also factors which

are considered in determining whether a confession was voluntary. *See United States v. Astello*,

241 F.3d 965, 968 (8th Cir.2001) (finding that the defendant's confession was voluntary because

the defendant was eighteen years old, had completed the eleventh grade, and had experience with

law enforcement officers as a result of two prior arrests). The Petitioner make no assertion that

he was in any way incapacitated at the time he made his statements to law enforcement.

The Petitioner's assertion that his statements were not voluntary is without merit.

### 17.  Sentence is Procedurally Unreasonable:

The Petitioner contends that his sentence is unreasonable because the court failed to

consider the factors listed in §3553. The Petitioner's claims in this section were decided adverse

to him in his appeal to the Eighth Circuit Court of Appeals. *See U.S. v. Ram*, 594 Red. Appx 317

(2015), (Doc. 72-1).

### 18.  Violation of Equal Protection:

The Petitioner contends it is unconstitutional to charge some child pornography cases as

state charges and some as federal charges.

Courts have permitted a subsequent federal prosecution after a conviction for the same

conduct in state court, *United States v. Simpkins*, 953 F.2d 443, 444–45 (8th Cir.), cert. denied,

504 U.S. 928, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992); after an acquittal for the same conduct in

state court, *United States v. Staples*, 747 F.2d 489, 490–91 (8th Cir.1984); after a defendant

successfully obtains the suppression of evidence in the state court and the consequent dismissal

of the state charges for lack of evidence, *Amuny*, 767 F.2d at 1116, 1119; *United States v. Renfro*, 620 F.2d 569, 573–74 (6th Cir.), cert. denied, 449 U.S. 902, 101 S.Ct. 274, 66 L.Ed.2d 133 (1980); after the state court prosecution is dismissed for failure to provide a speedy trial, *United States v. Nelligan*, 573 F.2d 251, 254–55 (5th Cir.1978); or after a successful challenge to the jurisdiction of the state court. *United States v. Bartlett*, 856 F.2d 1071, 1074–75 (8th Cir.1988).

**19. Violation of Right Against Self Incrimination:**

The Petitioner claims that he was denied his right against self-incrimination. This argument is without merit and was previously addressed.

**20. Violation of Human Rights:**

The Petitioner contends the United States violates human rights as well as United Nations Article 7 and 11because the DOJ is sentencing individuals to longer prison sentences compared to other countries. There is no constitutional argument asserted here and the claim is without merit.

**21. Racial Discrimination.**

The Petitioner contends that white inmates who faced similar charges received lighter sentences. The Petitioner's claims in this section were decided adverse to the Petitioner in his appeal to the Eighth Circuit Court of Appeals. *See U.S. v. Ram*, 594 Red. Appx 317 (2015), (Doc. 72-1).

**B. Evidentiary Hearing:**

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An evidentiary hearing on a habeas motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v. United*

*States*, 202 F.3d 1030, 1032 (8th Cir. 2000) A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998).  "There is no requirement of a hearing where the claim [s] [are] based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations." *Amos v. Minnesota*, 849 F.2d 1070, 1072 (8th Cir.), cert. denied, 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988). *Sidebottom v. Delo*  46 F.3d 744, 751 (C.A.8 (Mo.),1995)

The court finds that the record of the case does establish conclusively that the Petitioner is not entitled to an Evidentiary Hearing.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be **DISMISSED with PREJUDICE**.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED  April 16, 2018.

_/s/ J. Marschewski_
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE